# UNITED STATES DISTRICT COURT

**FILED**

for the

Eastern District of California

OCT 1 6 2018

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

BY _____
DEPUTY CLERK

| | |
|---|---|
| In the Matter of the Search of ) | |
| ) | |
| White Apple (IPhone) cellular phone, model ) | Case No. |
| #NQ972LL/A, with IMEI: 35 301109 285257 3, ) | |
| currently located at U.S. Forest Service, Redding, CA. ) | 2: 1 8 - SW - 0 8 5 7    KJN __. |
| ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____ Eastern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Manufacture of Marijuana, |
| 21 U.S.C §§ 841(a)(1) and 846 | Conspiracy to Manufacture Marijuana |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☑ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Nickolas Roe

*Applicant's signature* (Approved Tr-Telephonically)

Nickolas Roe, Special Agent, U.S. Forest Service
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Oct 5, 2018

City and state: Sacramento, California

*Judge's signature*

Kendall J. Newman, U.S. Magistrate Judge

*Printed name and title*

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| | ) | |
| White Apple (IPhone) cellular phone, model | ) | Case No. |
| #NQ972LL/A, with IMEI: 35 301109 285257 3, | ) | |
| currently located at U.S. Forest Service, Redding, CA. | ) | 2: 1 8 - SW - 0 8 5 7    KJN |
| | ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Manufacture of Marijuana, |
| 21 U.S.C §§ 841(a)(1) and 846 | Conspiracy to Manufacture Marijuana |

The application is based on these facts:

## SEE AFFIDAVIT, attached hereto and incorporated by reference.

☑ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Nickolas Roe, Special Agent, U.S. Forest Service
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  10-5-2018

City and state:  Sacramento, California

Kendall J. Newman (approved telephonically)
*Judge's signature*

Kendall J. Newman, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT OF NICKOLAS ROE
## IN SUPPORT OF AN APPLICATION FOR A WARRANT TO SEARCH DEVICE

I, Nickolas Roe, being duly sworn on oath, depose and say as follows:

## I.      INTRODUCTION AND PURPOSE OF AFFIDAVIT

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of
   Criminal Procedure for a search warrant authorizing the examination of property—an
   electronic device—which is currently in law enforcement possession, and the extraction
   from that property of electronically stored information described in Attachment B.
2. The property to be searched is a white, Apple (IPhone) cellular phone, model
   #NQ972LL/A, with IMEI: 35 301109 285257 3, hereinafter the "Device."  The Device is
   currently in the custody of the U.S. Forest Service in Redding, California.
3. The applied-for warrant would authorize the forensic examination of the Device for the
   purpose of identifying electronically stored data particularly described in Attachment B.

## II.     AGENT TRAINING AND EXPERIENCE

4. I am a Special Agent with the United States Department of Agriculture, Forest Service,
   Law Enforcement and Investigations.  I have been so employed since December 2010.
   Prior to being a Special Agent, I was a law enforcement officer for approximately four
   years.

5. I was trained as a Forest Service Special Agent at the Federal Law Enforcement Training
   Center in Glynco, Georgia.  During my training, I received specialized instruction in the
   Controlled Substance Act, Title 21 of the U.S. Code.  I have received specialized training
   regarding criminal organizations engaged in conspiracies to manufacture and possess
   with the intent to distribute marijuana and other dangerous drugs.  I have received further
   training in search and seizure law and many other facets of drug law enforcement.

6.  During the course of my employment as a Forest Service Law Enforcement Officer, I
   have participated in numerous criminal investigations and have gained knowledge and
   experience by working with other Officers and Agents.  I have participated in numerous
   federal and state search warrants involving controlled substances, the seizure of narcotic
   related records and other types of evidence that document the activities of criminal
   organizations in both the manufacturing and distribution of controlled substances.  To
   successfully conduct these investigations, I have utilized a variety of investigative
   techniques and resources, including physical and electronic surveillance and various
   types of infiltration, including cooperating sources and undercover agents.

1

7. Through these investigations, my training and experience, and conversations with other experienced agents and law enforcement personnel, I have become familiar with the methods used by people to manufacture marijuana, smuggle and safeguard marijuana, to distribute marijuana, and to collect and launder related proceeds.

## III.    STATEMENT OF PROBABLE CAUSE

8. On October 12, 2016, Trinity County Sheriff's Office Sergeant Omar Brown, Corporal Ron Hanover and Corporal Nate Trujillo conducted foot reconnaissance in the area of Limedyke Mountain off Forest Service road 2N16 and discovered a fully harvested marijuana cultivation site at geo coordinate N40 33.706 by W123 25.848. Agents witnessed several bottles of malathion pesticide, multiple bags of fertilizer, thousands of cut marijuana stalks, a large camp, propane tanks, several items of food and multiple sleeping bags. Several items were cached in an area surrounded by barbed wire as if to protect them for next season.

9. On April 13, 2017, Corporal Hanover placed surveillance equipment on Forest Service road 2N16. Surveillance equipment showed a vehicle bearing California license plate 59720J1, on Forest Service road 2N16 just below the Limedyke marijuana cultivation site discovered in 2016. A registration check was completed and the vehicle was registered to Juan Ortiz-Madrigal, at 520 Lampasas Avenue, Sacramento, California. On May 9, 2017 at approximately 6:40 p.m., Assistant Special Agent in Charge Steve Frick conducted a drive by of 520 Lampasas Avenue and witnessed a Chevy Avalanche parked behind a closed gate in the driveway. The Chevy had the same license plate number that was captured on surveillance equipment near the Limedyke marijuana cultivation site on April 22, 2017.

10. On May 12, 2017 myself and Trinity County Sheriff's Office, Sergeant Nate Trujillo located a foot trail off Forest Service road 2N16, approximately 1000 feet below the Limedyke marijuana cultivation site located in 2016. I witnessed fresh foot tracks on the trail leading from Forest Service road 2N16 towards the Limedyke marijuana cultivation site. Trujillo and I followed the trail and discovered the trail became more defined, nearly clear of forest litter and worn down to bare mineral soil. I have learned through my experience that suspects who cultivate marijuana usually use one main trail to travel from their drop point where they receive supplies for their marijuana cultivation site.

11. On June 30, 2017 at approximately 6:00 p.m., surveillance was being conducted at the drop point for the Limedyke marijuana cultivation site located on Forest Service road 2N16. At approximately 9:30 p.m., Forest Service Law Enforcement Officer Cory

Gordon witnessed two Hispanic males emerge from the forest onto Forest Service road 2N16.  The two suspects walked approximately 80 yards to an area that was suspected of being a possible cache spot for supplies. This area was approximately 20 feet away from the drop point and had a trail leading into the forest, offering concealment from the road by forest vegetation.  I had inspected this area on several different occasions and witnessed the forest litter had been compacted, potentially from heavy items being placed in that area or people laying in that area.  Gordon witnessed the two males walk into the suspected cache area and emerge approximately two minutes later with duffle bags on their backs that appeared to be completely full. Gordon witnessed the two suspects take the duffle bags and hike uphill on a trail that traveled to the marijuana cultivation site.   It should be noted the trail Gordon witnessed the suspects travel up was the same trail that Trujillo and I had witnessed shoe or boot impressions in dirt on May 12, 2017.

12. I reviewed surveillance photos of the drop point and discovered a black Toyota FJ Cruiser had stopped at the drop point on June 30, 2017 at approximately 4:54 a.m.  A camera photo caught the license plate of the FJ Cruiser.  The FJ Cruiser had a California license plate that read 7LQY612 and was registered to Pedro Ortiz-Madrigal, at 520 Lampasas Avenue, Sacramento, California.  Videos show the driver and the passenger get out of the FJ Cruiser and walk to the back (although the faces/heads cannot be seen as they are above the top of the camera view).  The two suspects go out of view, video shows the FJ Cruiser's body moving up and down over the rear passenger side tire like something heavy was being removed.  Another video showed a passenger go back to the passenger side of the FJ Cruiser and unload a case of Budweiser beer and a plastic jug. (The passenger in the video was later identified as Dimas ORTIZ as explained later in this affidavit.) Additionally, I obtained photos of the driver (again, head outside of the camera view) who was wearing cargo shorts that appeared brown in color and white high top shoes, similar to classic Converse, commonly referred to as "Chuck Taylor's." However, the white high top had gold lettering on the tongue that said "CK" with "Calvin Klein Jeans" written through the CK.

13. On August 7, 2017, agents from the U.S. Forest Service, California Fish and Wildlife, North State Marijuana Investigation Team, Bureau of Land Management and the Trinity County Sheriff's Office, entered the marijuana cultivation site located near Limedyke Mountain, on the Shasta-Trinity National Forest in Trinity County, in the Eastern District of California.   A path led from the supply drop point located on Forest Service road 2N16 to the marijuana cultivation site (hereinafter the Limedyke grow site).  Two persons were found and arrested in that grow site, Carlos Gutierrez-Gonzalez and Sebastian Martinez Arreola [both Indicted for marijuana manufacturing in E.D.CA Case No. 2:17-CR—152 KJM].  Additionally, three suspects fled and were not apprehended by agents. In the Limedyke grow site officers found and eradicated 2,596 growing marijuana plants.

3

Officers also located multiple cellular phones, toothbrushes, food, chemicals (including Carbofuran), sleeping bags, a cook stove, propane tanks, clothing, fertilizer and miscellaneous growing material. A .45 caliber Ruger handgun was found near the area Gutierrez-Gonzalez reported it falling out of his pocket. In a post-arrest statement, Gutierrez-Gonzalez admitted having worked at the site for several months. He also said that a total of five persons had been working at the site, and identified a photograph of the black Toyota FJ Cruiser (taken from a surveillance camera) as a vehicle used to drop off supplies for the site.

14. On August 8, 2017 at approximately 4:47 a.m., a vehicle bearing California license plate 8S49645 was captured on my camera at the drop point for the Limedyke marijuana cultivation site. The vehicle arrives at the drop point, turns around and leaves approximately sixty seconds later at approximately 4:48 a.m. The vehicle was registered to Alejandra Vidriales (wife of Dimas ORTIZ) at 520 Lampasas Avenue, Sacramento California. Furthermore the vehicle is a 2004 Chevy pickup. In 2016 Forest Service Agent Steve Frick obtained a tracker warrant, to track a 2004 Chevy pickup bearing California license plate 8S49645. However, at that time, the vehicle was registered to Juan Carlos Pedraza. The warrant was obtained because there was probable cause to believe the vehicle was supporting an illegal marijuana cultivation site on National Forest lands within a quarter mile of the drop point for 2017 Limedyke marijuana cultivation site. It is my experience people who conspire to manufacture marijuana often times transfer or sell their vehicles to other co-conspirators to register the vehicle to a different address, to conceal the vehicle's location from law enforcement.

15. Sometime towards the end of September of 2017, I went onto Facebook and discovered an account belonging to Madrigal Pedro (believed to be the account of the registered owner of the Toyota FJ Cruiser). That Facebook account contained a photo of a black FJ Cruiser that appeared to be the same vehicle my cameras caught on June 30, 2017 at the drop point for the Limedyke marijuana cultivation site. I reviewed Madrigal Pedro's Facebook friends list and discovered Madrigal Pedro was Facebook friends with Armando Mayorga.

16. I then went up on Armando's Facebook account and discovered that Armando uploaded a selfie. In the bottom left of the selfie it said "ARMANDO MAYORGA, JUNE 18, NEAR LAS VEGAS, NEVADA." Armando was wearing cargo shorts that appeared brown in color with white shoes that appeared similar to classic Converse "Chuck Taylor's." I compared the selfie of Armando to pictures of my suspect taken from a surveillance camera on June 30, 2017 and they appeared to be the same person (or at least the same body size and wearing similar clothing). I continued to review Armando's Facebook wall and discovered a photo of him in front of what appeared to be a birthday

4

cake. The date on the photo was April 2, 2012. I counted the candles in the photo and came up with an approximate date of birth of April 2, 1997 and provided the information to the task force analyst. The task force analyst provided me Armando Mayorga Garcia's Cal-Photo information which listed Armando's date of birth as April 2, 1996 and his address to be 7139 Bacchini Ave, Sacramento, California.

17. On October 5, 2017, myself and Special Agents Ryan Harvey and Jeremiah Laudenslager conducted surveillance in Sacramento in an attempt to locate Armando. At approximately 6:50 a.m., I was contacted by Harvey, informing me he had found Armando at 7139 Bacchini Avenue. Additionally, Harvey said he witnessed Armando get out of the driver's seat of a green older model GMC Denali. Harvey said he recognized Armando as the driver of the Chevy from the Cal-Photo I had shown him previously. Harvey said Armando was wearing light brown work boots, woodland camouflage BDU type pants, and a dark colored unzipped sweatshirt. Harvey witnessed Armando walk to the front door of 7139 Bacchini Avenue, put a key into the door lock, open the front door and enter the residence. The green older model GMC Denali has a California license plate that reads 5LFA242 and is registered to Franklin Esparza at 7139 Bacchini Avenue, Sacramento, California.

18. At approximately 7:10 a.m., Armando left 7139 Bacchini Avenue driving the green Chevy. Agents followed Armando to Cosumnes River Junior College were I positively identified Armando when I witnessed Armando park and exit the green Chevy. I followed Armando at Cosumnes River Junior College and witnessed Armando walk into a class room. I continued to an administration building and learned Armando was taking elementary Spanish on Tuesday and Thursday from 7:30 a.m., to 8:50 a.m. At 9:44 a.m., Armando left Cosumnes River Junior College and traveled to a large apartment complex. At approximately 9:54 a.m., I witnessed Armando park the green Chevy and walk into 4199 Brookfield Drive, Sacramento. 4199 Brookfield Drive, is an apartment building that has a privacy fence, dark brown in color, surrounding the entrance. In addition the utility information came back to Cecilia Mayorga-Romona. Cecilia Mayorga is Armando's cousin.

19. On November 17, 2017 I was reviewing additional photos from the drop point of the Limedyke marijuana cultivation site taken by the trail/roadside camera. One of the photos captured by the trial cameras contains a full body photo (this time including a side view of his head) which photo is consistent with the Facebook photo of Armando. I believe both photographs are the same person and that Armando was the person who drove the Toyota FJ Cruiser to the Limedyke marijuana cultivation drop site to deliver supplies on multiple occasions.

20. On December 14, 2017 a search warrant was executed at 7139 Bacchini Avenue, Sacramento, California. During the search of the residence agents discovered a brown pair of cargo shorts size 42. The brown cargo shorts appear to be the same brown cargo shorts that my cameras took pictures of on June 30, 2017 at the Limedyke marijuana cultivation site. Agents also discovered a pair of white Calvin Klein high tops which had gold lettering on the tongue that said "CK" with "Calvin Klein Jeans" written through the CK size 13. The white Calvin Klein high tops appear to be the same white Calvin Klein high tops that SA Roe's cameras took pictures of on June 30, 2017 at the Limedyke marijuana cultivation site. In addition agents found one pound of processed marijuana, indicia, pay stubs, (evidence log #4, item #5) for Mayorga in 2016, and a tax return for Armando in 2016.

21. Armando was arrested on December 14, 2017. I seized his smart phone at the time of his arrest. In addition to the search warrant an arrest warrant for Armando was executed on December 14, 2017 at Cosumnes River College. Armando was escorted to an interview room at Consumnes River College. Miranda rights were provided to Armando. Armando waived Miranda and agreed to talk with me. Armando said he was working for money and that he was going to receive ten percent of whatever they made from the sale of the marijuana after the marijuana was sold. I explained explicit details to Armando about a drop Armando conducted on June 30, 2017, in which Armando had a passenger who he identified as "Dimas ORTIZ" who helped unload supplies. I asked Armando if "Dimas ORTIZ" was the boss and Armando said, "Most likely. He is the one who hired me."

22. Armando said that "Dimas ORTIZ" hiked into the marijuana garden on June 30, 2017 to check on things. I asked Armando if the Limedyke marijuana cultivation site belongs to "Dimas Ortiz" and Armando said, "I am pretty sure it is." Armando went on to say that he was not certain that "Dimas Ortiz" was the boss. I asked Armando who was going to pay him and Armando said, "Dimas."

23. On April 24, 2018 through April 26, 2018 I reviewed the contents of Armando's cellphone from a thumb drive the information had been copied on to. While reviewing the contents I clicked on an icon that said "Timeline." The icon opened and revealed historical text messages which Armando had sent and received. On August 7, 2017 at 7:39 p.m., Armando sent a text message to a contact listed in his cellphone as C with a heart icon next to it. The contact listed as C with a heart is Cecilia Mayorga. The text message says "did they arrest them." The text message was sent a few hours after agents raided the Limedyke marijuana cultivation site. In addition, three suspects fled from agents during the raid and got away.

6

24. Additional text messages between Armando and Cecilia were sent on August 7, 2017 between the hours of 7:39 p.m., to 7:55 p.m. The text messages reveal Armando texted Cecilia that the garden had been raided, the cops took everything, and that two suspects had been arrested. Furthermore, Armando texted Cecilia stating everything they had worked for was gone and they lost at least 500K. Cecilia sent Armando a text, saying the garden wasn't even hers but she felt really bad for them, but the important thing was that Armando and Dimas were okay.

25. On August 7, 2017 at 11:12 p.m., Armando sent a text message to Steve Heringer. The text messages says "Hey Steve at the moment I'm on my way to Hampom, ca on an emergency pickup, my relatives got stranded out there on their way back to Sacramento. as far as the math goes it's 4 ½ hr drive and another 4 ½ back I should be getting there around 4:30 AM and back home around 9am I will give you a call around 7:00 AM when I am back on highway I5 and out of the no service area. I apologize for the inconvenience and I will head to work at soon as I am back." This text messages tells me that Armando was going to the Limedyke marijuana cultivation site to pick up the three co-conspirators who fled from law enforcement the morning of the raid on August 7, 2017.

26. On August 8, 2017 at approximately 4:47 a.m., a vehicle bearing California license plate 8S49645 was captured on my camera at the drop point for the Limedyke marijuana cultivation site. The vehicle arrives at the drop point, turns around and leaves approximately sixty seconds later at approximately 4:48 a.m. The vehicle is registered to Alejandra Vidriales (wife of Dimas Ortiz) at 520 Lampasas Avenue, Sacramento California. On May 11, 2018 I received an email from Sacramento Sheriff's Office of Dimas Ortiz arrest/booking report. The arrest/booking report shows Dimas Ortiz was arrested for California Health and Safety (HS) Code 11359 –Possession of marijuana for sales and HS Code 11360 Sell/Furnish marijuana/hash. I reviewed Dimas Ortiz criminal history and learned his case for possession of marijuana for sale (11359) was dismissed and his furnish/etc/ marijuana/hash (11360) disposition was bailed to foreign jurisdiction. The next of kin on the arrest/booking report list Dimas Ortiz, wife as Alejandra Vidriales with a home address of 520 Lampasas Avenue, Sacramento, California. It should be noted, the arrest date for Possession of marijuana for sales was February 9, 2016. Based on the above, I believe that Armando went to the Limedyke marijuana cultivation site the day after the marijuana garden was raided in a vehicle which was registered to Alejandra Vidriales, the wife of Dimas ORTIZ and picked up the three other grow workers that had not been arrested during the raid.

27. On May 1, 2018 surveillance was conducted on 520 Lampasas Avenue, Sacramento, California. Agents witnessed subjects moving furniture and bags out of the 520 Lampasas house and load it into a truck. In addition, agent witnessed a for sale sign in

7

the front yard of the 520 Lampasas house.  On May 2, 2018 agents conducted surveillance on Cecilia.  Agents observed Cecilia leave her place of work and travel directly to 5928 41st Street, Sacramento, California.  Cecilia was driving a Nissan Altima that is registered in her name.  Agents observed Cecilia park her car in the driveway, exit her car and walk into the residence it was approximately 6:57 p.m.  At approximately 7:12 p.m., agents witness Cecilia and Dimas ORTIZ exit the residence.  In addition agents witness Dimas ORTIZ lock the front door.  Dimas ORTIZ and Cecilia got into Cecilia's vehicle, Dimas ORTIZ in the driver seat and Cecilia in the passenger seat.  Agents followed them to a parking lot at a 24 Hour Fitness and observed the two exit the vehicle and enter the 24 Hour Fitness.

28. On May 21, 2018 I was conducting surveillance on 5928 41st Street, Sacramento, California.  It was approximately 11:15 a.m., I witnessed Dimas ORTIZ washing a Mustang that was parked in the driveway of the residence.  Based on this, I believe that Dimas ORTIZ had formerly resided at 520 Lampasas Ave., Sacramento, CA but moved to 5928 41st Street, Sacramento, on or about May 1, 2018.  In addition, I observed a second subject who was standing in the driveway talking with Dimas ORTIZ as he washed the vehicle.  I recognized the second subject as Emanuel Gutierrez-Gonzalez, who is the brother of Carlos Gutierrez-Gonzalez.  Carlos Gutierrez-Gonzalez was arrested in the Limedyke marijuana site on August 7, 2017 and pled guilty to federal marijuana cultivation charges on May 7, 2018.

29. On September 26, 2018, a warrant to arrest Dimas ORTIZ was signed by Dennis M. Cota, United States Magistrate Judge.  On October 4, 2018 at approximately 9:54 a.m., I observed Dimas ORTIZ walk out of the residence located at 5928 41 Street, Sacramento and get into the driver's seat of a black BMW, bearing California license plate 8BRK054.  I followed Dimas ORTIZ as he drove that BMW to Home Depot located on Florin Road.

30. I observed Dimas ORTIZ walk into the Home Depot at approximately 10:07 a.m.  At approximately 10:28 a.m., I observed Dimas ORTIZ exit Home Depot, walk to the BMW he had driven to Home Depot and open the trunk.  I then walked over to Dimas ORTIZ and identified myself as Law Enforcement.  I told Dimas ORTIZ he was under arrest.  Dimas ORTIZ had a white Apple IPhone in his pocket which I seized. (*described further in Attachment A*) Additionally, Dimas ORTIZ identified the phone to be his.

### AFFIANT'S EXPERIENCE REGARDING ITEMS TO BE SEIZED

31. Based on my training and experience, and consultations with other federal, state, and local law enforcement personnel, I believe the following to be true:

32. Marijuana manufacturers often take, or cause to be taken, photographs of themselves, their associates, their property, and their marijuana plants, and usually maintain these photographs in their possession.

33. I know that those involved in the growing and distributing of marijuana use mobile telephones to communicate with customers, suppliers and co-conspirators. Mobile telephones preserve in their memory a history of incoming, outgoing, and missed calls, which can lead to evidence of the telephone numbers of other co-conspirators and the dates and times that they and/or the mobile telephone user dialed one another's telephones. Mobile phones also contain in their memory a telephone book. This allows the user to store telephone numbers and other contact information. The information stored in a telephone used by a marijuana cultivator is evidence of the associations of the marijuana cultivator, some of which are related to his or her illegal business. Mobile telephones also contain in their memory text messages sent, received, and drafted by the mobile telephone user. The text message history of a marijuana cultivator's mobile telephone can contain evidence of their illegal activities because it shows the communications or planned communications of a marijuana cultivator and the telephone numbers of those with whom the marijuana cultivator communicated or intended to communicate. Mobile telephones also have a voicemail function that allows callers to leave messages when the telephone user does not answer. Mobile telephones can also contain other user-entered data files such as "to-do" lists, which can provide evidence of crimes. Mobile telephones can also contain photographic data files, which can contain evidence of criminal activity; for example, where the user is a marijuana cultivator who took pictures of his/her plants and/or grow site. Mobile telephone companies also store the data described in this paragraph on their own servers and associate the data with particular users' mobile telephones.

## TECHNICAL TERMS

34. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.

9

These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at

least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.   PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

35. Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

36. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

37. Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that

11

establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

g. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the device in use.

h. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

i. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

j. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

k. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

38. <u>Nature of examination</u>. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with

the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

39. <u>Manner of execution</u>.  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

40. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Nickolas Roe
Nickolas Roe
Special Agent, U.S. Forest Service

Subscribed and sworn to before me on this 5th day of October, 2018.

The Honorable Kendall J. Newman
United States Magistrate Judge

Approved as to form:

David W. Spencer
Assistant U.S. Attorney

the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

39. <u>Manner of execution</u>.  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

40. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

        I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

_____
Nickolas Roe
Special Agent, U.S. Forest Service

Subscribed and sworn to before me on this 5th day of October, 2018.

Kendall J. Newman (approved telephonically)
The Honorable Kendall J. Newman
United States Magistrate Judge

Approved as to form:

David Spence (telephonically)
David W. Spencer
Assistant U.S. Attorney

13

**ATTACHMENT A**

*Device to be Searched*

1.  One white, Apple (IPhone) cellular phone, model #NQ972LL/A, with IMEI: 35 301109
    285257 3.

**ATTACHMENT B**

1. All records on the Device described in Attachment A that relate to violations of 21 U.S.C. §§ 841(a)(1) and 846, including:
   a.  Any and all names, words, telephone numbers, email addresses, time/date information, messages or electronic date in the memory of the mobile telephone or on a server and associated with the mobile telephone and described as:
      i.   Incoming call history (for the period of 4/20/17 to 10/4/18);
      ii.  Outgoing call history (for the period of 4/20/17 to 10/4/18);
      iii. Missed call history (for the period of 4/20/17 to 10/4/18);
      iv.  Outgoing text messages (for the period of 4/20/17 to 10/4/18);
      v.   Incoming text messages (for the period of 4/20/17 to 10/4/18);
      vi.  Draft text messages (for the period of 4/20/17 to 10/4/18);
      vii. Telephone book (a/k/a "contacts list");
      viii. Data screen or tile identifying the telephone number associated with the mobile telephone searched;
      ix.  Dates screen, file, or writing containing serial numbers or other information to identify the mobile phone searches;
      x.   Voicemail (for the period of 4/20/17 to 10/4/18);
      xi.  User-entered messages (e.g., to-do lists) (for the period of 4/20/17 to 10/4/18).
   b. lists of customers and related identifying information;
   c. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;
   d. any information related to sources of drugs (including names, addresses, phone numbers, pictures, or any other identifying information);
   e. any information recording schedule and/or travel (for the period of 4/20/17 to 10/4/18);
   f. internet browsing history (for the period of 4/20/17 to 10/4/18); and
   g. photographs.

2. Evidence of user attribution showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

   As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

In the Matter of the Search of )
)
White Apple (IPhone) cellular phone, model #NQ972LL/A, )
with IMEI: 35 301109 285257 3, currently located at U.S. Forest )
Service, Redding, CA. )
)

Case No.

2 18 - SW - 0 8 5 7    KJN

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search
of the following person or property located in the _____ Eastern _____ District of _____ California _____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property
described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____ 10/19/2018 _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the
person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the
property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory
as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern
District of California.</u>

☐  Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose
property, will be searched or seized *(check the appropriate box)*
☐    for ____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    Oct 5, 2018    2:50 p.m.

Judge's signature

City and state:    Sacramento, California    Kendall J. Newman, U.S. Magistrate Judge
*Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____     _____
Signature of Judge                                              Date

## ATTACHMENT A

*Device to be Searched*

1. One white, Apple (IPhone) cellular phone, model #NQ972LL/A, with IMEI: 35 301109 285257 3.

**ATTACHMENT B**

1. All records on the Device described in Attachment A that relate to violations of 21 U.S.C. §§ 841(a)(1) and 846, including:

   a. Any and all names, words, telephone numbers, email addresses, time/date information, messages or electronic date in the memory of the mobile telephone or on a server and associated with the mobile telephone and described as:

      i. Incoming call history (for the period of 4/20/17 to 10/4/18);

      ii. Outgoing call history (for the period of 4/20/17 to 10/4/18);

      iii. Missed call history (for the period of 4/20/17 to 10/4/18);

      iv. Outgoing text messages (for the period of 4/20/17 to 10/4/18);

      v. Incoming text messages (for the period of 4/20/17 to 10/4/18);

      vi. Draft text messages (for the period of 4/20/17 to 10/4/18);

      vii. Telephone book (a/k/a "contacts list");

      viii. Data screen or tile identifying the telephone number associated with the mobile telephone searched;

      ix. Dates screen, file, or writing containing serial numbers or other information to identify the mobile phone searches;

      x. Voicemail (for the period of 4/20/17 to 10/4/18);

      xi. User-entered messages (e.g., to-do lists) (for the period of 4/20/17 to 10/4/18).

   b. lists of customers and related identifying information;

   c. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   d. any information related to sources of drugs (including names, addresses, phone numbers, pictures, or any other identifying information);

   e. any information recording schedule and/or travel (for the period of 4/20/17 to 10/4/18);

   f. internet browsing history (for the period of 4/20/17 to 10/4/18); and

   g. photographs.

2. Evidence of user attribution showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

   As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2